MORICE, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*October 11—November 7, 1906.*

*Street railways: Injury to person crossing tracks: Contributory negligence.*

Plaintiff alighted from the rear of an electric car going north on the eastern of two parallel tracks, between which was a space of four and one-half feet. He stepped back a short step to the east and looked north, but saw no car approaching, his view being obstructed by the north-bound car. He then crossed to the west behind that car and did not again look to the north until just before he reached the western track. He then stopped and looked, and as he did so was struck by a car going south on that track at a high rate of speed. Had he looked after passing the west rail of the eastern track, while still in a place of safety, he could have seen the car approaching. He was familiar with the locality and knew that a car was likely to pass at any time at a fairly good rate of speed. *Held,* that he was guilty of contributory negligence as a matter of law.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

This is an action for damages on account of personal injuries sustained by plaintiff by reason of being struck and

injured by one of defendant's street cars in the city of Milwaukee on April 1, 1903. In the city of Milwaukee, Downer avenue runs north and south and is intersected at right angles by Summit Place. Defendant operated a double-track line of electric railway consisting of two parallel tracks along and upon Downer avenue. The tracks extend from Summit Place directly north without curve for a distance of six or seven blocks—one half or three quarters of a mile,— and from the intersection of the two streets in question a car can be seen coming from the north for a distance of five blocks. The gauge of each track, or the distance between the rails, was the standard gauge, four feet eight and one-half inches. The width of space intervening between the easterly and westerly tracks was four feet nine and one-half inches, measured from the center of the rails, or four feet six inches from the outside of one track to the outside of the other. The car from which plaintiff alighted, and also the one which came from the opposite direction and struck him, was forty-one feet in length over all, and forty-three feet including the fender. The steps of these cars project about eighteen inches beyond the rails, and the body of the car about twelve inches. On the 1st day of April, 1903, at 9 p. m., plaintiff, who had been carried northward upon Downer avenue upon defendant's electric railway, alighted from the rear platform of the car at the north crosswalk at the intersection of Summit Place and Downer avenue. The car from which he alighted was proceeding on the easterly track, and, after he alighted, the car proceeded, and plaintiff walked across the track behind the car, and was struck, while crossing the space between the two tracks and just before entering upon the westerly track, by a south-bound car. From a judgment directing a verdict in favor of defendant plaintiff appeals.

For the appellant there were briefs by *Churchill, Bennett & Churchill,* and oral argument by *W. H. Churchill.*

*Clarke M. Rosecrantz,* for the respondent.

KERWIN, J. The only questions involved upon this appeal are: (1) Negligence of defendant; (2) contributory negligence of the plaintiff. If the plaintiff was guilty of contributory negligence he cannot recover, and the question of negligence of the defendant need not be considered.

It appears from the evidence without dispute that the plaintiff alighted from the rear platform on the east side of the car going north upon the east track; that he stepped back a short step to the east and looked north, but saw no car approaching; that he waited until the car from which he alighted moved on, then walked slowly behind the north-bound car across the east track, listening for the sound of an approaching car, or gong, but heard neither; that when he got between the east and west tracks he stopped and looked north to learn whether any car was coming, and as he did so a south-bound car on the west track going at a high rate of speed struck him and threw him backward a distance of from twenty-five to thirty feet; that the car from which he alighted stopped at the usual and customary place on the north crosswalk; that plaintiff listened up to the time he was struck; that the car in which he was traveling, as well as the one which struck him, was well illuminated by electricity, with windows all around and so situated as to emit light therefrom; that the car which struck him had a headlight burning. The point of injury was in the suburbs of the city between three quarters and one mile inside of the city limits. Plaintiff had lived for a period of about six months about two blocks from the point where he alighted. This portion of the city is well settled, there being quite a number of residences there and considerable travel on the streets. Plaintiff was familiar with the speed at which the cars ordinarily ran at the point of injury, and knew that a car from the north might be expected at the time of injury, and that cars ordinarily were run at a fairly good speed. At the time of injury the car which struck plaintiff was running at a much higher rate of speed than ordinarily. Plaintiff testified that

the car from which he alighted had gone four or five feet north when he reached the east rail of the north-bound track, and that when he reached the west rail it had gone about ten or fifteen feet; that until just as he was struck he did not look to the north at any time for an approaching car after he looked just as he alighted from the east side of the car, and that about the instant he saw the south-bound car he was struck; and, further, that when he was between the tracks he could tell that the headlight on the approaching car was burning.

So it appears from the uncontradicted evidence that until he was struck plaintiff did not look for an approaching car at any time after he first looked immediately upon alighting and when a short step east of the rear platform.    Obviously at this time the car from which he alighted so obstructed the view that he could not see the south-bound car upon the west track, although it is clear from the evidence that, had he stepped back two steps, he could have seen it.    The view being obstructed until he passed the west rail of the east track, he was bound as soon as the view became unobstructed to look before he entered the path of danger.    Had he looked after he crossed the west rail of the north-bound track and while out of danger he could have seen the approaching car at a distance of about half a mile.    This was ample opportunity and he should have availed himself of it, especially since the view was obstructed from the time he alighted until he crossed the west rail of the east track.    In *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 464, 82 N. W. 295, this court said:

"If, during any part of his course, the track is obscured from his vision, the duty is all the more imperative to avail himself of every possible unobscured opportunity, and, if partial obstruction to vision or hearing exist, to make effort to overcome such obstruction.    Omission of any reasonable effort likely to be effective is negligence as matter of law; not merely is it evidence of negligence."

Plaintiff testified that about the instant he saw the car he was struck. The failure to look in time to avoid being struck when he had opportunity to do so, and when he knew that a car was likely to pass at a fairly good rate of speed at any time, was negligence. *Dummer v. Milwaukee E. R. & L. Co.* 108 Wis. 589, 84 N. W. 853.

"Due care in approaching a railway track can be satisfied only by full use of the senses of sight and hearing at the last moment of opportunity before passing the line between safety and peril." *Goldman v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 170, 101 N. W. 384; *Marshall v. G. B. & W. R. Co.* 125 Wis. 96, 103 N. W. 249; *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585; *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837.

We are cited by counsel for appellant to the rule that the proof of contributory negligence must be so clear and decisive as to leave no room for unbiased and impartial minds to come to any other conclusion than that plaintiff was guilty of contributory negligence. We are mindful of the rule, and have given it due weight in this case. In connection with this rule it may be observed that due weight should also be given to the decision of the trial court on the question of the sufficiency of the evidence. *Clifford v. M., St. P. & S. S. M. R. Co.* 105 Wis. 618, 81 N. W. 143; *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573. We have been cited to several cases outside of this state by counsel for both parties, but we think the case before us is ruled by decisions of this court, and consideration of other authorities is unnecessary.

We are of opinion that the plaintiff was guilty of contributory negligence as a matter of law, and the judgment below must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.